Our next case is International Rights Advocates v. Mullin, 24-2316. Counselor Collinsworth, you reserve five minutes of your rebuttal time. Yes, Your Honor. I will endeavor to do that. May it please the Court, I am Terry Collinsworth and I represent International Rights Advocates in this matter. Let me ask you a threshold question here. We received a letter, a March 31st letter, from the Department of Justice. It looks similar in form to other letters that were received or were sent to you. This one, in the second paragraph, says that the investigation is not being actively pursued at this time. It appears to me that, given the circumstances of the case, that a good argument could be made that your case is moot, because you have received what you've been asking for, and which is a great part of your briefing, and that is to receive an answer from the agency. It looks like you got one. No, Your Honor. I read this letter as reinforcing our position that the government didn't do any of the things it was required to do when we filed a petition. That it had to act upon that petition, either to grant it or deny it formally. This doesn't deny the petition. It doesn't say there's no merit to it. It tells you that there's no investigation and none is going to be pursued, and that's what you've been asking for in an investigation. We've been asking for a decision on whether the petition has merit, and this is not a denial of that petition. It is simply a bureaucratic way of saying we never did anything before, we're not doing anything now, and it is our position that the merits of this case have to be assessed. I'm troubled with any type of decision that comments on the merits when you've already conceded, not conceded, but the issue of the relief that you've been arguing for, has been entitled to, that that's been satisfied. Your relief has been satisfied. I wonder whether this case is justiciable. There's no controversy here anymore. Again, Your Honor, the government was required to either grant or deny this petition. They've done neither. They did this investigation for six years, and during that entire time we kept saying, well, are you going to take action or not? And we filed our case to compel prompt agency action under the Administrative Procedure Act. Mr. Carlson, let's say hypothetically that the letter that Judge Raynor is referencing said we are denying the relief sought, and used the word denial or something like that. Would you argue that that is not sufficient? No. If they had formally said, after concluding our investigation, we find that your petition lacks merit and we're not going to take any action as a result of it, we're denying the relief you requested, then that's all we've ever asked for. I think the Court of International Trade, the CIT, implied that we were wanting a particular result. We did not want a particular result. We want to challenge the final decision. First of all, I have great sympathy for your situation. I have great sympathy for your situation. The reason why I ask, though, is it seems a little form over substance in response to Judge Raynor's question about, you know, they say we're not investigating. How far afield is that from a denial? Well, this does not in any way assess the merits of our petition, which if we go back to the very beginning, we filed a petition that they had to tell us within 10 days, was there anything wrong with it? That was under 19 CFR 12. Isn't that, though, if you went to the CBP officer, I might have this wrong, but it might go, CBP officer, it's filed with somebody like that within 10 days, they have to tell you something's wrong. If nothing is wrong, then they would send it to somebody higher up in the chain. And I think you filed your petition with an entity that was higher up in the chain, so I'm not sure any of that really had to occur. Well, there are very specific regs that we lay out in paragraphs 122 to 34 of our complaint, that after we submit the petition, if they don't find anything wrong with it, there are steps they have to take. They've never evaluated in any way, as far as I know, the merits. And there is a – And your view is really also relying on Section 706 saying they have to do something. They have to do something. Your view that they've unreasonably delayed providing you with a decision. And if you assume the merits, as you must, because this was a dismissal based on lack of standing, then Section 307 is a mandatory statute. They don't have the option of doing nothing. And that's what they did here. They've still done nothing. They didn't tell us that there's no child labor, for example. There's child labor in the cocoa that is being imported into the United States. No one can deny that in the Court of International Trade. You've caused me to not want to eat any chocolate. For what it's worth, you've caused me to not want to eat any chocolate that isn't certified fair trade. Okay? So – but what I want to ask you about is standing for a minute and alliance. I'm concerned that your – I guess that your case is really thwarted by the Supreme Court's 2024 decision in alliance, which says, you know, no matter how much effort you put into your litigation, you can't buy fairness. And I'm wondering, you know, have you made – I just haven't seen where you have made an argument, for example, that this effort being put into this action where you're trying to get a decision from the agency has prevented you from providing education on this issue or providing counseling on this issue or that you're working with ethically sourced chocolate companies that are impacted by this because they're being undercut by chocolate that is not ethically sourced. I'm wondering, have you made any arguments like that or proceeded in that way? Yes, Your Honor. Just to close, though, on the letter, if it was a final decision, and I don't believe it is, and it's not a matter of wordsmithing. This is weasel words here saying it's – we're not doing anything. If they denied our petition and said there's no merit to it or somehow closed it, then we could challenge that under the Administrative Procedure Act, Section 7062A, as arbitrary, capricious, or not in accordance with law. And that is a result that we would be satisfied with. A final decision that we could challenge so that they can't get away with doing nothing for six years on a petition that was meritorious. To answer your question, Your Honor, on standing, sure, alliance and Havens Realty create a spectrum. One requires a concrete – Havens requires concrete injury, and then you had to incur costs to address the government or the defendant's harm to you. And alliance is you can't just have advocacy. You can't buy your way into standing. Here is very clear in our complaint that, first of all, our mission includes litigation, and we're very clear about that. That's paragraph 117 of the complaint, and it's in Appendix 85. Have you shown that you weren't able to pursue other litigation because you were too busy on this effort? I'm just trying to find your concrete injury. Sure. Our injury is that we have roughly three different litigation avenues that we have been pursuing historically, and it's in the record, it's in the complaint. We file claims under the Alien Tort Statute. That has been largely foreclosed by the Supreme Court's decision in Doe v. Nestle. We file claims under the Trafficking Victims Protection Act, and that is not foreclosed. We're working on reacting to the Court of Appeals' decision in Kubali. And then third, we have been using Section 307 of the Tariff Act. Those are three tools, and they're all very important tools, and I think – Can I just ask, in your use of those tools, have you been using – and you said bring in cases. Have you been – your organization – been the plaintiff, or have you been counsel for some other individual who might actually be directly or even indirectly affected by the forced child labor? In the other cases, we represent children who we found and identified as having been child slaves, and so they were the plaintiffs in those cases, and we acted as their counsel. In our efforts under Section 307 of the Trade Act – of the Tariff Act, we are the plaintiff because we are the petitioner. We had the information. We were qualified to file the petition. So it's only in these cases under Section 307 that we international rights advocates are directly involved as plaintiffs or petitioners in the litigation, and we are the petitioners here. But – so – In terms of Section 307 and child labor, is there a framework set out to administer the procedures and leading to some form of relief and judicial review after that? Well, under the petitioning process that is created by the – by – it's in paragraphs 122 to 34. The regs under 19 CFR 1242, the CBP, Customs and Border Protection, set up this procedure. Is 19 CFR 1242 the only implementing regulation on this? Yes, Your Honor, that I'm aware of. So we followed – I don't see any deadlines or any timing, other than the expression prompt notice. That's correct. And that's what you would like for us to focus on. Yes, and – but the Administrative Procedure Act allows us to bring a claim to require prompt agency action. And so that's a – there's no deadline. There's no how many days would that be. But six years, I think, is well past what would be a reasonable deadline to have taken action on a petition. But the Court of International Trade's decision dismissing your case is based on lack of standing, right? That's correct. So your argument – I think you've got two of them. One is that you're injured by no longer having this vehicle for challenging the use of child labor in production of coke, right? That's correct. And then your other argument – what is your other argument? Oh, your other argument is that under the APA, you had to put in additional monetary efforts and work into gathering information when the agency told you your information was stale, right? After they did nothing for three years, they told us our information was stale, so then we incurred additional costs. And that is outlined in Paragraphs 106 to 114 of our complaint. So just like Havens, we say their denial of this important tool took away from us a major avenue that we had at our disposal to fight this horrible issue of child labor. Havens had something different in it, though, right? Havens, in that case, they were able to show not only was a tool taken away, but also that the decision of the agency impacted their business of providing counseling and education to individuals who were seeking fair housing, right? And this impacted our business, if you will, as a nonprofit. What is your business? Your business is… Advocating to prevent child slavery, among other issues of that sort. But the Supreme Court has said that your business can't just be that you're advocating in support. It has to be that there's something else. That's why I'm asking questions like, maybe it's something for you to think about in the future. Do you have something else? Do you have your ability to make movies and different educational materials was thwarted because your economic resources were put into fighting this? I don't see anything like that in your papers. Absolutely. Again, if we only have three tools, and two of them are kind of shaky right now with the private actions, this tool to use Section 307, they took it away from us by saying, basically, you can't use that anymore. And then they also, as in Havens, I think gave us false information. They encouraged us for years to keep spending money. I guess what I keep focusing on at Havens, Havens, the defendant was not the government. That's correct. It was private sellers of real estate, or at least renters of real estate. And the plaintiff was essentially a free real estate agent. Whoever was paying them, keeping their employees paid, maybe they were charging fees to their clients, or maybe not. I couldn't find anything about that. But I'm not sure that really matters. But they had a business. Essentially, they were real estate agents. And they sued somebody who was harming their business by denying their clients opportunities to buy or rent property. You're kind of not anywhere in that category at all. You, the international rights advocates, is suing the government to get the government to make a decision that you think. Full stop. I disagree with that, Your Honor. We are not asking them to make the decision we want. We're saying make a decision so that we can either be happy with it or challenge that decision. You can't do nothing. In order to eventually to try to get them to make the right decision, even if it takes going back. But you're not protecting a business independent of your interest in getting the government to make decisions that you think are good decisions. Well, Havens was an odd case because the defendant was private. But the other cases we cite, military veterans advocacy, where this court entertained whether changing the procedures of the Veterans Administration caused an injury to an organization that was trying to help veterans. They were quite literally agents for the veterans whose benefits were at issue. It was a computer system or something where it impacted their client's ability to access their own records. Something to that effect. There was something that impacted their ability to represent clients. Their ability to do what they were created to do. But not to advocate to represent clients. Advocacy and alliance meant we don't like what the government's doing, so we're going to complain. Advocacy, as I'm using it, means litigation. We have cases that are concrete cases that we're bringing that we can no longer bring to help people who are victimized by such things as child slavery. And Abigail Alliance and the other cases that we cite, those were all cases where the government was preventing a nonprofit from doing what it was supposed to do. I see I'm well over time. I hope I can have a little bit for rubato. Before you sit down, let's look at 162 of the appendix. It's a page that's not numbered, but if you go to page 163, it's 162. Here's a letter from CBP, and they discuss meeting with your group. And they go back and refer to the previous information and says that up to that point, there's no sufficient basis for the CBP to move forward with enforcement. At least until that date, we knew that there was no enforcement, no investigation moving forward since that time. That's four years ago. And then this letter comes in and says, up to that particular date in August, no new information has been received. Your group has not sent in any new information. None has been received, and that's why the investigation has come to an end. Well, Your Honor, the letter that you pointed to, that is our Exhibit F, where we think is evidence of bad faith. They sat on our information for years and then said, oh, it's not very current. And then we spent a significant amount of money going back to Cote d'Ivoire twice, gathering additional information, and we submitted all of that before 2024. So now the letter we just got said, well, from that time until now, we haven't received anything more. Well, we were waiting to see what would happen after we submitted very current information. If this is what you're saying, I would agree that the rug was pulled out from under your feet. But illegally, because they did not have the option to do nothing. They could deny the petition or agree with it. You are arguing that there was a legal obligation by the agency to act in a certain manner, and that's prompt. And before we could get to that particular issue, you prayed for relief. And that's an answer. Where are we with the investigation? You got an answer from us. We're not asking where they are on the investigation. We're asking what action are you going to take as a result of the petition? What is it that we can do? We can order them to either grant the relief that we sought or deny it so that we can then appeal under the Administrative Procedure Act and say that their decision has been arbitrary and capricious. But having them make no final decision is not giving us the opportunity to take legal measures. Thank you. We'll save you time for rebuttal. Thank you, Your Honor. Let's hear from you. Thank you, Your Honor. May it please the Court. This case is about international rights advocates and its lack of constitutional standing. Speak up just a little bit, please. Yes, Your Honor. It's about its lack of constitutional standing to bring this action. Can I ask you a hypothetical? I mean, I'm just going to jump right in. Okay. Let's say that our advocates had with it one of the sustainable chocolate companies that is listed in the February 14, 2022 letter. Okay? Just one of those. And the argument was that they were being undersold in the market and therefore by chocolate companies that were using this improper child labor. Would that then provide standing? Your Honor, not knowing everything about the hypothetical, it would not provide standing for IR advocates. The injury still has to be personal to a personal stake for IR advocates. Let's just say that would it provide standing for the sustainable chocolate company? Possibly, yeah. That's what my question is. Okay, yes. I would say Or if they were a member of IR advocates or something like that. Okay, that's a very different situation than what we I don't know. That's why I said it's a hypothetical. Okay. So that's my question to you. And you're agreeing with So I'm saying possibly, yeah, that could be. It's like if IR advocates had members that could show injury, possibly that would be fine. That would be able to have standing. Possibly if there were other companies or producers or, as you were mentioning, sustainable entities. And they could show injury and causation of addressability. That's true. They could also find constitutional standing. But then we're only looking at constitutional standing. There's still a whole host of statutory standing, but we won't get into that right now. But in any case, this case is about constitutional standing and IR advocates lack thereof of it. Let's back up a little bit. Okay. Did IRA file a petition? Yes, it did. And in that petition, they cited CFR 1242E. And they also cited a statute, 5 U.S.C. 55E. That statute so far worked together, right? So far, I understand, yes. They cited 55E. And that statute requires prompt notice from the agency of the denial in whole or in part of a written petition. I don't see in the record that there's been a prompt denial. There has not been a denial, Your Honor. There's not been a denial at all? No, there has not been. Well, certainly it's not. Is it active? It's not. Sorry. It's not being actively pursued at this time, but investigations are longstanding. Something like this, this investigation has been very longstanding. It has been going on for a very long time. And it's not just based on IR advocate's petition or information. Once there is an allegation that is made, it's like, as you noted in the CFR, there are certain steps that need to be taken. Has there been a decision as to whether Section 307 has been violated? There has not been a determination as yet, either way. Why? The investigation, truly the CBP is looking to see whether it can make a determination either way, either no WRO or yes to a WRO. We've got a letter saying that there's nothing happening right now. So it's really hard to say that they're doing what you just said. I can understand that. But, Your Honor, these investigations, as a law enforcement agency, they take very seriously to enforce 1307. 1307 is very difficult also to, it's not just a finding of forced child labor, which is what we're talking about here. But the statute is clear. The statute is clear insofar as once there is a determination made that there is forced child labor that can then be, we're talking about imports, traced to particular supply chains and particular products. It's like then they have an obligation. Essentially the statute requires that if information that reasonably shows, reasonably shows a Section 307 violation, you have not responded yet to the appellant and whether or not the information you have submitted reasonably shows a 307. So I ask you this question, has that determination been made? The determination has not been made. Why? So, again, it's because the investigations are longstanding and they ebb and flow. That's a very normal way of... That doesn't matter if the investigation, the statute says prompt notice. The statute, I don't believe you're referring to 1307, Your Honor, which is something that we do have to look at that will inform what we're talking about. If you're referring to the CFR, the regulations, everything was given to IR advocates that is required. There was transmission of its allegation to the commissioner and then an investigation was undertaken, and that's clear. An investigation was undertaken and continues to be... Is the investigation guided by the APA? The investigation, as a law enforcement agency, it is, I would submit, that any determination or a decision not to enforce or to act on it would be committed to agency discretion. That suggests it's subject to the APA? No, Your Honor. It would be under US v. Texas and Heckler v. Cheney. If there's a decision not to act, there hasn't been a decision, Your Honors. There hasn't been. I know that that might be... Let me ask you a question, and I think it may be yes or no, okay? But is the investigation, the 307 investigation, is it subject to the APA? The review? I'm sorry? Review, if we're talking about review, that would be... precedents that say that a decision not to enforce something or not to prosecute or not to deport, such as in cases of Heckler v. Cheney and US v. Texas and even salmon spawning in this court. It's like there is a recognition that reviewability is presumed to be unreviewable until there's some other extenuating circumstance. And so a decision would be unreviewable until when? Perhaps. Unless the presumption is rebutted. So, for example, in Your Honors Court, salmon spawning, the presumption exists, and then we took a look at the statute to see whether or not there was anything that Congress mandated in terms of what is reviewable, what could be looked at. And it was determined that there was nothing. And just to make sure I understand, the regulation says that if the Commissioner of CBP finds that at any time information available reasonably but not conclusively indicates that there was child slave labor used, then it should be his to advise the court directors that that merchandise shouldn't come into the United States, right? That is true, and I would like to also emphasize at any time, which is another reason why there is no time limit on an investigation. Again, it's very difficult for the agency to determine that there's forced child labor. Child labor itself is legal in the Ivory Coast. It is very difficult to... Why can't you base the decision on the petition? Because, Your Honor, the investigation is... Are you familiar with an anti-dumping case and what that entails? An anti-dumping case? Yes. A little? If you're not, that's okay. Okay. Go on. Okay. But investigations aren't necessarily limited to just what the information is given. If I may just point out to Your Honors that the regulation allows for a willingness for CBP to take in information, a suggestion, a tip, any sort of information. It's what they believe, and CBP welcomes that. But as to what happens to that information, there isn't an obligation or entitlement as to what the person who has provided that information should receive. And the reason for that is because this is law enforcement, and we are looking at things that are very sensitive. Forced child labor is very difficult to trace. And then for us, for 1307, CBP has to relate that finding of forced child labor through to supply chains, through to particular products. In this case, IR advocates asked for a countrywide WRO, so not just one plantation or one farm or one producer. They're asking us to look at everything. And so that's the investigation that was undertaken, and it just happens to not be active right now. But it is still pending and still around. And the hope is, even by the agency, that we will receive information or develop information. And other investigations may inform that as well. There are other countries in Africa that may also inform this. And the hope is that at some point there will be definitive information such that there can be a determination that's made as to whether there should be a WRO or there shouldn't. But at the moment, there are other priorities, enforcement priorities, that CBP has to pursue because they do have information on other investigations, on other priorities that they have. So it's not that it's closed or that there's a decision that was made. It happens to be inactive right now, but it could become active today. It could become active tomorrow. So that's what the meaning of the letter is. And we wanted to tell the court because under full transparency, we just wanted to let the court know what we knew about the status of what's happening. But in any case— Can I ask you on the post-standing aspect? And I think Mr. Collingsworth adverted to some aspect of this. If there's a law firm or even just a lawyer who has a number of clients and the client's ability to get some relief is being hampered by the government in some way, does the lawyer have Article 3 standing? I want to put aside any other questions about third-party standing, statutory standing, to file a lawsuit saying, I'm challenging the government action because my interest as a representative of clients, the clients are not here as plaintiffs, will be adversely affected. I would say no, Your Honor, because— First of all, is that inconsistent with that Ninth Circuit decision recently? I don't remember which Ninth Circuit decision that you're referring to. Judge Merguia wrote Immigrant Defenders Law Center. Oh, the one that IR advocates provided? Right, the one that took them off. So that's a little bit different because their core business activity, per se, was to represent people who are seeking asylum, and that was their activity. I'm sorry, at least I was trying to make that my hypothetical. The lawyer who has clients, the clients are being harmed by something the government is doing. The lawyer sues the government, the clients are not suing the government, and says you, the government, have either by action or inaction, as in this case, harmed my clients and my ability to represent them. Right, so in that particular case, that would be a personal stake that is there because it is their business, they're not just an advocacy group, they're also a— It would be one step away from Havens. I mean, that still would be a suit against the government, as opposed to where Havens was not. But it would be more like Alliance because there's a core business activity in that they had to expend resources and then cross the border in order to meet with their clients, but they had a litigation, they had a representation business on their own. In this case, IR advocates doesn't have that. So what if you're saying IR advocates does not represent the children? They do not represent the children. What if they represent the children in other cases? Well, those other cases that Mr. Collins was referring to are brought under other statutes. So for this particular one, no. So for 1307— It has to be the same. Your view is that it has to be the same statute. Well, that's what I know for this particular case. It would be limited to this case. But there is no injury. That's why I asked about this lawyer example, right? Because Mr. Collins said they do actually serve as representatives of more directly harmed children or somebody else. But you're saying that might be an Article III protected interest, but it's not causally connected to the violation because it's a different statute. I believe in that particular case, Your Honor, it was found that there was organizational standing. And the reason being was because they had a counseling and referral service separate and apart from advocacy matters or pursuits that they were— I'm sorry. Which side of that line is filing a lawsuit on behalf of somebody? So that's their— Business was trying to seek asylum, I believe. It was trying to seek asylum for various people. And in order to meet and file applications, they had to meet with their so-called people that they were clients. They were trying to help, but they had to then expend more resources in order to even meet with those clients. So the action was deemed to be directly interfering with their core business activity. So in that particular case, and I'm not saying the Ninth Circuit's right, but in that particular case, it's like it was found that there was a core business activity separate and apart from advocacy efforts as well as a direct interference with that core business activity. So it wasn't just a response in reaction to the Remain in Mexico Act. That's my recollection in any case. So that's different. That's different from what we have here. We don't have a core business activity that was directly interfered with in our advocate's case. And so that is the crux of the injury, plus everything else. I see that my— And so I'm starting to come up on my time, but it's like that is the main thrust of the injury. So they claim that they're deprived of a tool. There's no deprivation. The statute and the regulations do not provide for any sort of response, as I mentioned before. And using it as a tool, litigation is typically not considered to be a tool, especially when it's in response to, in this particular case, a non-action. As I believe it was mentioned before, it's like the statute doesn't require any particular time frame or response. And so it's very hard then to say that there is a response that is required. The other issue— So I guess that gets back to Reina's question, to phrase it in a very particular way. One of the things the APA gives an adversely affected person a right to complain of is of action unreasonably withheld. That's in 706. Yes, Your Honor. Would I be wrong in thinking that in order for there to be action unreasonably withheld, there doesn't have to be another statute or regulation that sets a time on the action? In order to see if there is an action unreasonably held— It's a very rare kind of—I get all of that. But the fact that there isn't anything in 1307 or in 12.42 that sets a time limit doesn't end the 706 action unreasonably withheld APA inquiry. And I know you would have a defense to APA that it's actually committed to agency discretion by law. I'm just focusing on this one thing. So I think it would—we have to look at the statute. I don't think we can divorce—we can say that the APA requires this notice without looking closely at 1307. 1307 is a very discretionary statute. It's like all it says is that once there's forced labor that might be found in a product that is going to be imported or is being imported, it's like then CBP will prohibit it from coming across the border. Does the statute define who may file the petition? No. In fact— Any interested person? No. In fact, the regulation accepts it from anybody. There's a willingness to accept it from any information. It's really—you know, a petition sounds a little bit more formal, but really it has to do with any sort of information. It might be equivalent to something— So the statute is designed to give anybody the right to seek—to file a petition and seek redress? It's—I wouldn't say it's a right. It's a willingness, and it's in the regulations. You're way out of your time. I'm very sorry. Okay. Was there any other questions, Your Honors? Okay. Thank you very much for your indulgence. Okay. Mr. Collingworth, you have five minutes of time left on rebuttal. Thank you very much, Your Honors. Well, first, let me briefly say, then, we have resolved that this letter is meaningless. It is not a denial. It is not a final decision. I cannot appeal it in any way. It's just more delay. It seemed to me that the government could see that this thing was being moved. Am I correct? Okay. Thank you. Now, if I can go back to first principles for one second. What has been described here strikes me as completely arbitrary and capricious behavior by a government agency that we could challenge under the APA if we have standing. And we have to talk about why we have standing one more time, because we do have standing. First of all, again, there's no dispute about this. The Supreme Court in the Worth case and the D.C. Circuit in Doe v. Apple, it's very clear that the merits have to be assumed. Our claim, our underlying claim, has to be assumed as meritorious in order to assess standing. And our claim is that 307 is not something that is optional for CBP. The language is mandatory. It says these goods, these child labor harvested cocoa products, shall not be entitled to entry. That is mandatory language. And our position is we have the right to challenge that because that is a tool, a very important tool, that we use to further our work of stopping child labor. I want to clarify. The case that Your Honor cited that I presented to the court, immigration defendants, the Ninth Circuit decision, but also even Havens. Havens and immigration defendants, there were not specific clients. There was not Joe Smith and John Jones that they were trying to help in particular. They were saying that those are our constituents. I think that's a better word. We're helping. Our job is to help our constituents. The constituents of IR Advocates are child slaves. We do everything we can to help them. We file individual cases for them. We do make movies. There's a film called The Chocolate War that is all about our work. We also bring claims under Section 307. And they've taken that tool from us by saying they don't have to do anything. They can wait six years. They don't even have to make a decision. That denudes a very important tool, and that has injured us. Also, as in Havens, they played us for three years. For three years, this is in the complaint, they said, well, get us more information. And we spent a ton of money getting them more information. And then they went dark for two more years, and then we got this letter. That's exactly like Havens, where the alliance court called it defective goods, where the false information being provided by the defendant cost us money. And so that's another extremely concrete injury. So if we do have standing, and I think we do, then we're probably the only ones that can then dig into this arbitrary treatment under the Administrative Procedure Act. And I think we could win on the merits if we get there. Okay. Thank you, sir. Thank you. We thank the parties today for your argument.